Alright, our third case for this morning is Juan Suarez v. W.M. Barr & Company. Mr. Stanlon. May it please the court, on behalf of the Suarez's, I think we should point out at the beginning because it didn't appear in the briefs, that Illinois state law would apply to this product liability action. There's no, I don't think there's any content of my opponent otherwise, but I noted in reading the briefs that we didn't address that issue. So to the extent that the case is addressing Illinois state law regarding products liability, they would control this court under the choice of law provisions as far as plaintiffs are concerned. I take it that that's undisputed. It isn't. Now, I'm going to address first the failure to warn. Plaintiffs concede that if the warning on the professional strength goof-off can comply with the Federal Hazardous Substance Act 15 U.S.C. 1261, that all failure to warn claims are preempted. We've never maintained otherwise on that, but what we do maintain, we did maintain in the district court, is that if the warning on the can of professional strength goof-off did not comply with 15 U.S.C. 1261, that a product liability failure to warn stand-alone claim can go forward. So where is it? I mean, these cans very prominently warned that this was a highly flammable, extremely flammable product. What it doesn't do is go into how it might ignite, whether through a pilot light or a cigarette or a spark from static electricity or something else, a short. But I'm not familiar with any federal law, and I agree with you that state law is allowed to enforce the federal law, but it can't add. But I don't see any law that says that the label has to go into the next level of detail. Well, first of all, the defendant in this case did warn of how the vapors could ignite of professional strength goof-off. They specifically warned that a pilot light can't ignite and to turn off all your pilot lights because they can't ignite it. What they didn't warn about, and which they did warn about in the Kirsten v. Barr case, another flammable product the defendant manufactures, is beware static electricity can't ignite the vapors. That's missing in this case. And with respect to your... But why does federal law require that? Well, the statute itself... I mean, just to give an example of a pilot light, well, that's a pretty obvious example. But does federal law need to go through every possible source of ignition? Well, at least under 15 U.S.C. 1261 P.1.4, you have to describe the precautionary measures to be taken or avoided. That was not done here. So you're saying that they would have to identify all the possible ways that sparks are created. No, I think, Your Honor, what I'm suggesting is the language in the statute is pretty clear. It says that you must advise of the precautionary measures to be taken or avoided when using it. So then they should have also said that consumers warn consumers against agitating goof off with a brush? And that's what we think, that their directions to the consumer in this case are designed, according to the plaintiff's expert, to create the very thing that can't ignite the vapors. So that, I think, is your strongest argument. This has got to be a design defect. In consumer expectation design defect cases, the product has to perform safely the way an ordinary consumer would do it, using it in the intended manner. And if the label itself says, apply directly, agitate with brush, and that creates static electricity and the whole thing blows up on you, then the consumer is doing the intended thing and the consumer is hurt. That, I think, is the potential theory for you. That is our primary argument, because not only are they failing to what we believe is advise them of the principal hazard, but also that they didn't advise the precautionary measures to be taken. Well, there are no precautionary measures if you say, apply directly, agitate with brush, if the brush is going to create static electricity. Well, they actually do warn of precautionary. They tell you to turn off your pilot lights. No, but I thought your theory was if you did exactly what this label tells you to do, static electricity will be generated. I thought that's what one of your experts said, and the whole thing would ignite. And I thought your experts were also, of course, we maybe need to talk about your experts, but one of them was saying that given the diffusion of the fumes, he ruled out the pilot lights in this particular basement as the source of ignition. That is correct. You have to remember, in this case, what we have is we know the vapor's ignited. There's no question about it. The defendants, experts, and the plaintiff's experts all agree. The vapor's ignited and burned my client. No question about that. What the distinction is is that the defendant's experts say the pilot light in another room behind closed doors on a hot water heater in a furnace that may or may not have been on, we don't even know because the plaintiff could not recall whether he turned them on or off, so we're not even sure whether they're on or off, but that they ignited it. However, he concedes that it would take at least six minutes for the fumes to get to that area but the testimony of the plaintiff is that he poured it on the floor, started moving it, and right away it ignited, plus their experts. I thought he was a little unsure about it. I mean, of course, the poor man has had a terribly traumatic experience, but I thought he said, I don't know. It could have been one minute, two minutes, maybe even up to five. Well, there was a confusion in his deposition, number one, because of language. We had an interpreter. It was difficult. He didn't have the same strain of Spanish as my client apparently spoke. But beyond that aspect of it, it was pretty clear, and even the district court, looking at the record as a whole, said that right away after he poured it on the floor it ignited. And he said that, and it's contained in our brief, the cites to that. He did say it, so I think the fact finder could consider that. He poured it down and lit right away. They can try and impeach him, but the timeframe actually where he was mixed up was he thought they were asking him how long he'd been doing this thing, meaning going to Home Depot, buying the can, and coming back, and at one point he said two hours. Well, it wasn't on there for two hours. We know that, and he straightened it out later, and he ended up saying right away. But the real significance of this product being unreasonably dangerous is nobody can seize their own expert's sake. Static electricity, you can do it through your arms. The human body is, according to the defendant's expert, is a great generator of static electricity. So you don't think when in the warning where it says do not use in areas where vapors can accumulate and concentrate, such as basements, bathrooms, and small enclosed areas, you don't think that's enough? Because it says it warns and says do not use in areas such as basements. Our expert did say if what's warned against wouldn't have prevented the occurrence from occurring, it's irrelevant. That's what Kenneth Lowry testified, and it's in the record. So that warning didn't have anything to do with it because of the six-minute timeframe. This ignited right away, according to the evidence that we have. It can't have ignited right away. According to their experts on computer modeling, it takes six minutes. So it's inconsistent. And then their expert even admitted if it wasn't on the floor for at least six to ten minutes, I'd have more work to do. In other words, his theory that the pilot light ignited would be out. Can I ask you about your experts? The district court ends his opinion by granting the defendant's motion  Well, these motions in limine were the ones where they were arguing that your experts should be excluded. So I'm trying to figure out how we should evaluate your experts' testimony or whether there would be a need for a remand for a Rule 702 Daubert examination. I read the district court's opinion as not reaching that. I would agree with you, Your Honor. The district court did not reach the question of the Daubert challenges to two of the three experts. I would just point out briefly, though, with respect to the expert issue, the fire expert, they're arguing that when you're investigating, when you're a certified fire investigator in the state of Illinois, that in order to arrive at the origin and cause of a fire, which is what they do, and he's done this over 3,000 times. This is not somebody who's been a firefighter for years. He lectures on this issue. He's very well qualified. There's no question about that. But what they're saying, their argument, their principal argument is, you didn't recreate the fire. Now, that's kind of ridiculous. I mean, if you think about it, when we go out to a fire scene, what, are you going to burn the building down next door? Oh, yeah, see, that's how it happened. You can't do that, and you don't want to put somebody in a situation where they'll get it. So your position is fire, the people who are expert in fire analysis don't engage in reconstruction? They rely on NFPA 77 and 921 that are cited in there. These are peer-reviewed. These are pretty standard. This is pretty standard stuff. This is used all the time in the state courts in Illinois, and I presume federal as well, that these types of expert testimonies. I understand there's a different standard with Daubert and Fry and all those things. But putting that aside, I think both of what they're saying, these are pretty simple things. What my electrical engineer is saying is simply that static electricity can be caused by moving the broom. Well, so does their expert reprimand. He says exactly the same thing. There's no conflict in the record here about that static electricity can be generated in numerous ways. And NFPA 77 and 921 firmly indicate that static electricity can't alight the vapors from these highly flammable substances that have high acetone levels, such as professional-strength goof-off. Just in conclusion, I don't think. Yeah, you're about to run out of your rebuttal time. Okay. All right, well, I just want to say also, though, that the risk utility test I think also is in play here as well. I know we don't have to prove both of them, but I really do, because their director of product research says heavy duty should have been used here. It is a feasible alternative. It is to remove paint. And I'll reserve what remaining I have. Thank you. Fine. Mr. Cook? Good morning. I'd like to briefly address a few of the issues raised by the appellant in our argument, which I believe misstate the record. As the district court held, this court does not need to get to the issue of the warning labels secondary hazards. Under FRISA, the only requirements is that my client warn the user of the primary hazard, in this case extreme flammability, and they did that. So let's assume that's all correct. The thing that worries me about this label is the instruction for concrete and metal, which says, as you probably know, apply directly, agitate with power wash, residue, repeat if necessary. So the apply directly, agitate with brush part is what seems to have created this static spark. And, of course, this stuff is unbelievably flammable. Everybody knows that. And so that's that. And so when somebody does exactly what the label told him to do, why isn't that the kind of thing that's a defective design? Let me address that question, Your Honor, in two ways. First of all, the argument has been waived on appeal. The plaintiff made no argument in the district court with respect to subsection F of 1261, which deals with the precautionary label, precautionary requirements on the label. The only argument made in the district court had to do with subsection E, and that wasn't even developed. It was a brief statement that the plaintiffs do not waive the argument that the product did not comply with subsection E, which deals with advising of the primary hazards of the product. There is not one word of subsection F in the district court. I believe that they did raise the label point in their response to your motion for summary judgment. It wasn't expansive, but they did say something about it. And the district court addresses it, which is perhaps even more important because we don't want to sandbag the district judge, but if he addresses a point, then it's a disagreement. I respectfully disagree with that, Your Honor. I don't think subsection F, which deals with the precautionary requirements, was raised at all in the district court. However, having said that, the plaintiffs have presented no proof, even if they can get beyond the waiver problem that they have, that agitating this product with the broom caused the static electric spark. NFPA 77 lists the products and the conductivity levels that are prone to being affected by static electricity. And GUFOF, which is primarily acetone, that's the flammable product here, is not on that list. But acetone, I mean, I practically could take judicial notice. Acetone is a tremendous, and your own label says, a tremendously flammable product with a flash point at zero. It's like, you know, you sold somebody a hair dryer and you said, hop in the bathtub and start drying your hair. And, you know, anybody who did that would wind up getting electrocuted. I mean, you've told them to do something that's going to cause the spark. Well, first of all, Your Honor, our label specifically warns against sparks. But there's no evidence in this record. Not static electricity, I don't think. Not static electricity because static electricity is not a hazard associated with this product. And there is not one iota of proof in this record that a static electric spark can be generated by brushing this product. Well, the Kirsten involved a lacquer thinner label with warnings that were substantially similar to the GUFOF label, you agree? Yes, but that's a different product. I know, but the label in Kirsten was different in that it contained a warning about static electricity. Why was that warning provided in that case for the lacquer thinner? I would respond to that in two ways, Your Honor. First of all, this product, acetone, is not subject to generating static electricity with being stirred under NFPA 77. It lists the products, and if a product has an electrical conductivity level greater than, I think it's 10 to the 4th picocentimeters per milliliter, it's not a hazard that is associated with static electricity. Secondly, Your Honor, FRISA does not require us to list the secondary hazard. As the district court pointed out, the primary hazard associated with this product is its extreme flammability. We don't have to list every potential way that a product can be ignited. And as a matter of fact, there is not one iota of evidence in the record in this case that this product can be ignited by static electricity. Plaintiff has two experts here. The expert, the one expert says he's ruled out the other possible sources and thinks that it was a static spark, and the district judge never addresses your motion in limine decides it's not necessary based on the way he ruled, and I'm concerned about that. I'm not sure it's for this court to decide, but somebody needs to decide that. I think what needs to be distinguished here is whether static electricity can be generated as opposed to whether sufficient static electricity can be generated to ignite this product. There's a huge difference there. And I would point out the deposition testimony of Mr. Miller, who was plaintiff's static electricity expert. He was asked at page 29 of his deposition, so as you sit here today, you don't know whether the broom of the type being used by Mr. Suarez was capable of generating a static electric charge, which would have been sufficient to ignite goof-off. Is that correct, his answer? That is correct. So we have to distinguish between the mere presence of static electricity and sufficient static electricity to ignite goof-off. The testing that was performed by their expert is that he took a broom of the type being used by Mr. Suarez. It was the type and the brand and everything. Yes. It's the same broom. Yes. And they brushed it on clothing and they brushed it on a number of different foreign objects, and then he tested it with a primitive instrument that merely measures the presence of static electricity, not the quantity. And that's important because the experts in this case, plaintiff's experts, have not established that sufficient static electric charge could be generated by the broom in this case to ignite goof-off. In fact, his experts have two conflicting theories. His static electricity expert tested it by rubbing it on a number of objects, which there's no evidence in this record that Mr. Suarez did that and was only able to find that static electricity was present, not that there was sufficient charge necessary to ignite goof-off. I mean, our experts showed you have to have about 25,000 volts to ignite goof-off of static electricity, and the testing that we did duplicating what they did doesn't even come close to that amount. We measure. You can measure the amount of static electricity in a broom. They didn't do it. And when you do a measure, it doesn't come close to the amount of static electricity necessary to ignite this product. So your expert's theory is, despite everything, that it's the pilot lights? Pardon me? Because there's a dispute of fact about whether it's the pilot lights. I mean, there is a fire. You're not contesting that. Right. A man gets burned. So how does the fire start? And your experts say it's the pilot lights, and their experts say, no, it couldn't be the pilot lights because it happened too quickly. Yes. Is it a lightning bolt? Is it an act of God? I would like to correct the record as stated by plaintiff. He claims that the fire started almost immediately. Your Honor pointed out that in some points of his deposition, he says that it was one, two, three minutes when he was brushing. But it should be pointed out that he initially made an application of this product on the floor to test it to see whether it would work or not. He puts it on the floor and let it sit there. And in his testimony in that portion of the deposition, he said he let it sit on the floor for up to two hours. Well, that's where your opponent says he was confused, given the language barrier. That's what's in the record. I guess my opponent chooses to pick and choose those portions of the record that support his case. But if you believe the plaintiff's testimony, this product was on the floor for some period of time. And then he made a second application. And the second application is what your Honor was referring to earlier, where he talks about one, two, three minutes. If static electricity started this fire, it does not start one, two, or three minutes, even after he begins to brush it with a broom. If there was a static, theoretically, if a sufficient static electricity charge could be built up in a broom, sufficient to ignite Goufoff, which can't happen, it's impossible. But if it could, that static electric charge would ignite the fire at the very microsecond before it touches the floor the first time. Similar to you walking across the room in a carpeted floor. When you touch the doorknob, you get the little shock. That's when it occurs. If you touch it again, you don't get shocked the second time. If, theoretically, it could have been ignited, that's when. But it's not our burden to prove. Plaintiff has the burden of showing some evidence here that there was a sufficient electric charge to ignite Goufoff. Their experts don't know how much electricity could have been generated in the fictitious experiments that they conducted by brushing on objects, which there's no evidence in the record in this case. They didn't know what quantity of electricity would be necessary to ignite Goufoff, and they made no measurements to find out what quantity of electricity was present on the broom. Okay. So in summary, we think the district court should be upheld. The warnings claims are preempted. We comply with the federal requirements that are necessary in this case, and the plaintiffs have made no showing. I should also point out that under the strict product liability claims, they have to show compliance in a reasonably anticipated manner. We specifically warn on Arkan, do not use this product in a basement. He used it in a basement. If he doesn't do that, the accident doesn't occur. All right. Thank you very much. Anything further, Mr. Scanlon? Briefly. Page 10 of the short appendix is a copy of Judge Cannelli's order, and in it he says, and I quote, FHSA does not require a manufacturer to provide detailed warnings about every possible way in which a product's principal hazard might manifest. If we go to the previous page, short appendix number 9, Judge Cannelli does address all portions of the 15 USC 1261P1, including F, okay? And F says, precautionary measures describing the action to be followed or avoided. This is what, and this was addressed in the district court, contrary to what counsel is suggesting. And the reason that the argument was a little bit more, had a little more teeth in it in the appellate court, before the court of appeals here, is because it was never raised by the defendant on summary judgment. I'm only required to respond to the motion for summary judgment. It was Judge Cannelli that brought up the FD, does not require to provide detailed warnings about every possible way. Well, I'm just pointing out that the district court is wrong there, at least according, and plaintiff humbly suggests and respectfully suggests, because it does require them to stipulate, there's a layout conspicuously, the precautionary measures describing the action to be followed or avoided. They didn't do that here. And we maintain that they actually gave countermanding instructions to use it in a way that could cause it. So what's your response to your opponent's argument that you, that there's just, even if we were to take your expert reports and evidentiary gap about the quantity of electricity that needs to be present before this stuff will ignite. That is the peer reviewed things that we have cited in our brief deal with static electricity, igniting highly flammable, the vapors from highly flammable liquors like PSGO. What he's talking about in terms of infirmities, they tested a broom that don't even know what it is. They don't even know the name of the broom. They don't even know where they got it. I mean, their testing was so faulty in terms of what went on here and so misleading. These are, these are peer reviewed situations. Static electricity can ignite, but it depends upon the conditions. And it's almost impossible according to our experts and theirs too, to replicate the conditions that existed exactly on that day so that you'd have the exact amount of air, the exact amount of vapors. But what we've, the certified fire investigator does is he eliminates all other causes of this fire. He looks around the basement. He inspected the area. He was not one of these people who just looked at books. He went there, he looked, he measured, he took photographs. He evaluated the scene and eliminated all other potential sources, which was NFPA 21 says you must do. And he arrived at the static electricity as being the most competent source of ignition. Thank you for your time. I ask that the court reverse the district court's manning and summary judgment. All right. Thanks to both counsel.